UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE CROFT,

                 Plaintiff,        Civil Action No. 15-10077
                                     Honorable Arthur J. Tarnow
v.                                   Magistrate Judge David R. Grand

ALD, LLC, *et al.*,

                 Defendants.
_____/

### REPORT AND RECOMMENDATION REGARDING DAMAGES SUBJECT TO DEFAULT JUDGMENT AGAINST DEFENDANTS

**Background**

On January 9, 2015, plaintiff Renee Croft ("Croft") commenced this action against defendants ALD, LLC ("ALD"), and two of its employees who were identified only by their last names, Davis and Foley, alleging that they violated her rights under the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and willfully violated her rights under the Michigan Occupational Code, M.C.L. §§ 339.915 *et seq.* ("MOC") and the Michigan Collection Practices Act, M.C.L. §§ 445.252 *et seq.* ("MCPA"). (Doc. #1).

Certificates of service were eventually filed as to each of the defendants (Docs. #5, #16, #17), and when the defendants failed to properly appear in the action, the Clerk of Court entered defaults against them (Docs. #14, #22, #23). On September 21, 2016, Croft moved for default judgment against all three defendants. (Doc. #25). None of the defendants responded to that motion, which the Honorable Arthur J. Tarnow granted on November 9, 2016, stating:

> The Court will enter default judgment against all Defendants after a hearing has been held to determine the amount of damages. "Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved." *Vesligaj v. Peterson*, 331 F. App'x

>351, 355 (6th Cir. 2009) (unpublished) (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)). The court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). The court may, without violating any federal statutory right to a jury trial, conduct hearings or make referrals to determine the amount of damages when necessary to enter or effectuate judgment. FED. R. CIV. P. 55(b)(2)(B).

(Doc. #26 at 2-3). Pursuant to 28 U.S.C. § 636(b)(3), Judge Tarnow then entered an Order of Reference for the undersigned to determine the amount of damages subject to default judgment. (Doc. #27).

In her motion for entry of default judgment, Croft seeks entry of "default judgment in the amount of one hundred and one thousand dollars ($101,000.00), plus costs and attorney fees." (Doc. #25 at 5). More specifically, Croft seeks "$25,000 for actual damages, $1,000 for statutory damages under the [FDCPA], and $75,000 for treble damages under the [MOC and/or MCPA]." (*Id.* at 2-3). Croft argues that her "actual damages" include "emotional distress, mental anguish, frustration, humiliation, and embarrassment." (*Id.* at 3). On January 10, 2017, the undersigned held a hearing on the matter. Croft appeared and testified, as did her husband. None of the defendants appeared.

**Applicable Law**

"Having suffered an entry of default, Defendants' liability is established." *Thompson v. Rosenthal*, No. 14-cv-37, 2014 WL 7185313, at *1 (S.D. Ohio Dec. 16, 2014) (citing *Antoine v. Atlas Turner*, Inc., 66 F.3d 105, 110–111 (6th Cir. 1995)). "The plaintiff, however, must still establish the proper amount of damages to be awarded." *Id.* Rule 55(b)(2) authorizes the Court to conduct a hearing to "determine the amount of damages" and "establish the truth of any allegations by evidence." Fed. R. Civ. P. 55(b)(2)(B), (C).

If a debt collector is found to have violated the FDCPA, a court may award "any actual

2

damage sustained by such person as a result of such failure" and "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 ..." 15 U.S.C. § 1692k(a)(1) & (a)(2)(A). "Courts in this Circuit generally allow recovery for emotional distress damages under the FDCPA." *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d. 968, 971 (N.D. Ohio 2008). Section 1692k(b) provides that in determining the amount of damages to award, the Court must consider "among other relevant factors," "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional ..."

Section 339.916 of the MOC provides:

> (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this article or rules promulgated under this article, may bring an action for damages or other equitable relief.
>
> (2) If the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a wilful [sic] violation, it may award a civil penalty of not less than 3 times the actual damages, or $150.00, whichever is greater and shall award reasonable attorney's fees and court costs incurred in connection with the action.

Section 257 of the MCPA provides:

> (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this act may bring an action for damages or other equitable relief.
>
> (2) In an action brought pursuant to subsection (1), if the court finds for the petitioner, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was a wilful [sic] violation, the court may assess a civil fine of not less than 3 times the actual damages, or $150.00, whichever is greater, and shall award reasonable attorney's fees and court costs incurred in connection with the action.

Here, the "misconduct for which Defendants have been adjudged liable is the same for

each cause of action, so [Croft's] request for compensatory damages under the FDCPA and the [MOC and MCPA] will be discussed together." *Thompson*, 2014 WL 7185313, at *2.

**Analysis**

The Court heard testimony from Croft and her husband regarding the alleged wrongdoing by defendants and the damages she suffered. In short, Croft received (including at least once while at work) telephonic calls from defendant ALD via its agents seeking her repayment of an alleged $500 "payday" loan debt. Due to her husband having lost his job, Croft was aware that they had taken out various forms of credit during the time period in question, including payday loans. After some back and forth conversation, Croft agreed that ALD could electronically withdraw $100 from her and her husband's joint bank account, and she provided them with the account information. She also agreed at that time to permit two additional $200 withdrawals on subsequent dates to pay off the remaining balance of the claimed $500 debt.

The first $100 was successfully withdrawn from the Crofts' account. However, shortly prior to the time when ALD was scheduled to withdraw the first $200 payment, Croft spoke with an ALD representative and instructed that ALD no longer had her permission to withdraw the money. Croft testified that she believed, based on that conversation, that ALD was not going to withdraw the money. However, the next morning, Croft's husband checked their bank account on-line and saw that that ALD had, in fact, withdrawn the $200. Due to Croft's husband's job loss, they had very little money in their bank account at the time, and were scheduled to leave on a trip to northern Michigan for a hockey tournament that their 12 year-old son was playing in. Although the Crofts were ultimately able to get their bank to reverse the $200 withdrawal and put the money back into their account, they weren't able to do so prior to their trip.

Croft and her husband testified that although the family was able to make the trip to

northern Michigan for the hockey tournament, their enjoyment of the trip was greatly dampened due to the wrongful withdrawal of the $200.  According to the Crofts, this left their bank account essentially depleted (other than money that was already allocated for payment of other bills that were due), and they were not able to fully participate in and enjoy the hockey tournament.  During the drive, they argued and/or didn't speak to each other.  The Crofts were not able to attend the "team dinner" at a restaurant, and instead had to eat less expensively in their hotel room.  Also, they were unable to purchase souvenirs such as t-shirts and other tournament memorabilia, despite their children's requests for these things.  There is lingering friction between Croft and her husband, and between Croft and their children, due to the circumstances described above.  Moreover, Croft continues to feel "emotional distress, mental anguish, frustration, humiliation, and embarrassment" as a result of the situation.  (Doc. #25 at 3).

In her motion for default judgment, Croft seeks a total of $101,000 in damages plus costs and attorney fees.  (*Id.* at 5).  Croft did not submit any information as to her request for attorney fees and costs.  Thus, that aspect of her motion should be denied without prejudice, and Croft should be permitted to submit an attorney fee/cost petition, properly supported by affidavit, billing records, etc.  The amount awarded on that petition should be added to the damage award recommended herein.

The Court thus turns to Croft's request for actual damages under the FDCPA, and for a civil penalty/fine of three times her actual damages under the MOC and/or MCPA.  While the Court does not doubt that the unauthorized removal of the $200 caused Croft to suffer some emotional harm, the evidence proffered simply did not support her claim of $25,000 in actual damages.  Although there were a few telephone calls between Croft and ALD, Croft initiated some of those calls, and gave ALD permission to withdraw not only the first $100 payment, but

also (at least initially) two subsequent $200 payments. Croft's testimony as to whether she actually owed a debt to ALD was not entirely conclusive; while Croft's bank subsequently reversed the $200 withdrawal, she apparently never sought to have the initial $100 withdrawal reversed. Finally, Croft and her family were able to attend the hockey tournament, and any emotional harm suffered due to not being able to fully enjoy that experience, and any ongoing emotional ramifications from the situation are adequately compensated by the actual damages award recommended herein – $10,000.[1] This is particularly true considering the award of treble

---

[1] As Judge Borman explained in *Hett v. Bryant Lafayette & Assocs., LLC*, No. 10-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011), a somewhat analogous case in which the plaintiff sought emotional distress damages for violation of the FDCPA:

> …courts in this Circuit generally allow recovery for emotional distress damages under the FDCPA. *Davis []*, 585 F. Supp. 2d. [at 971]. These damages are included within actual damages allowable under § 1692k(a)(1), which was intended to include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress ..." *Id.* (quoting Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (Section 813–Civil Liability)) . . . Plaintiff requests $20,000 as compensation for the mental distress caused by Defendant's "telephonic tirade," which took place while the Plaintiff's wife was recovering from major surgery. . . Plaintiff has not presented any medical records, telephone records, witness affidavits, or other evidence to substantiate his claimed damages. Instead he relies solely on his testimony at the January 12, 2011 hearing. Accordingly, the Court will award $2,000 for Plaintiff's [emotional distress damages].

Here, Croft's sole evidence regarding the emotional harm she suffered is in the form of her and her husband's testimony. As in *Hett*, she did not supply any medical or mental health records to substantiate her claimed level of emotional damage. Croft also relies on three Eastern District of Michigan cases in which larger actual damages were awarded: *Green v. Nationwide Arbitration Servs., LLC*, Case No. 14-14280 ($35,000); *Zontini v. Merchants Recovery Services, et al.*, Case No. 12-14912 (approximately $30,814, which was about half of the $60,000 requested by Zontini, *see* Doc. #63, 9/4/14 hearing transcript at 32-33); and *Bryant v. Meade & Associates, Inc., et al.*, Case No. 15-10199 ($25,000). But the orders in those cases (attached as Exhibits 2-4 to Croft's motion) do not explain why larger damage awards were determined to be appropriate in those cases. And, at least in *Zontini*, the wrongful conduct and impact on the plaintiff was far more severe than the circumstances of this case. In *Zontini*, the defendant attorney debt collector obtained a money judgment against plaintiff by providing the court with a

damages as described in the next paragraph.

With no contrary evidence offered by ALD regarding its conduct, the Court can only find that it acted intentionally in withdrawing the $200 after being instructed (and, according to Croft's testimony, agreeing) not to do so. Thus, Croft is entitled to treble damages under the MOC and/or MCPA of $30,000. Together with the $10,000 FDCPA actual damages award and the $1,000 FDCPA statutory award, the Court recommends entry of a default judgment in the amount of $41,000 plus costs and fees which can be determined after Croft submits an appropriate application.

**Conclusion**

For the reasons stated above, the Court RECOMMENDS entry of a default judgment in the amount of $41,000 plus costs and fees which can be determined after Croft submits an appropriate application.

Dated: January 23, 2017　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific

---

false affidavit indicating that she owed a debt. Defendant then garnished the plaintiff's wages. After being advised by counsel that plaintiff did not owe the debt, the defendant withdrew the initial garnishment but did not return the funds. Instead, the defendant issued "repeated garnishments" against the plaintiff. *Zontini*, No. 12-14912, Doc. #25 at 1-2. Here, in contrast, Croft had initially authorized a relatively small withdrawal of $200, and when she complained to her bank, the withdrawal was reversed. ALD apparently did not contact her further.

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                                   s/Eddrey O. Butts
                                                                   EDDREY O. BUTTS
                                                                   Case Manager

Dated: January 23, 2017